ARKANSAS MEDICAL AND HOSPITAL SERVICE, INC. *v.* CRAGAR.

4-9808                                                      249 S. W. 2d 554

Opinion delivered June 9, 1952.

*Wright, Harrison, Lindsey & Upton,* for appellant.

*John G. Moore,* for appellee.

HOLT, J. Appellee, C. A. Cragar, brought this suit against appellant, Arkansas Medical and Hospital Serv-

ice, Inc., for expenses for medical and hospital services which he incurred on and after June 5, 1951. Appellant operated under the Blue Cross-Blue Shield plan and membership is obtained principally through groups. Appellee was one of a group of thirteen, added to the Perry County Farm Bureau (a unit of Arkansas Farm Bureau Federation). Appellant denied any liability.

The question presented is whether appellee's contract with appellant became effective on June 1, 1951, or on June 15, 1951. Appellee claimed that the effective date was June 1st and appellant asserted it was June 15th. Appellant says: "Appellant refused to pay benefits under the contract on the ground that it did not become effective until June 15, 1951, approximately ten days after appellee began the hospitalization which promptly led to the operation."

On a trial, and at the close of all the testimony, both sides asked for a directed verdict and other instructions, whereupon the court declared, as a matter of law, that appellee should recover and found in favor of appellee. From the judgment is this appeal. The judgment was correct.

As we read this record, the evidence is undisputed and to the following effect: May 14, 1951, the Perry County Farm Bureau met in Perryville to discuss and consider appellant's Blue Cross-Blue Shield plan of operation and membership therein. Among those present were H. T. Baber, representing Arkansas Farm Bureau Federation, Walter Paul, secretary-treasurer of Perry County Farm Bureau, Byron Huddleston, County Agent of Perry County, and R. L. McMasters, Sales Representative for appellant. Mr. McMasters took part in the meeting and "made a talk" (he is now in California and did not testify in this case.)

Mr. Huddleston testified: "Was there at that meeting a discussion relative to the effective date of the certificates and memberships that were to be issued? A. That is right, there was. Q. Was there an agreement reached between those present what that effective date

should be? A. I understood at this meeting that there was a definite effective date. Q. And what was that effective date? A. I understood that date to be June 1, 1951, provided a county quota was reached. Q. You mean June 1, 1951? A. Yes. Q. Was the county quota reached? A. It was. Q. And Mr. McMasters was present and participated in that meeting, A. He did.'' Mr. Paul's testimony tended to corroborate Huddleston's as to his understanding that June 1st was the effective date. This evidence was not contradicted.

May 29, 1951, following the May 14th meeting, a meeting was held at Aplin, Arkansas, attended by appellee, at which Mr. Huddleston filled out appellee's application dated June 1, 1951. Appellee signed this application and just above his signature thereon was this language:

''I hereby apply for membership as indicated with the understanding that I will receive a certificate specifying benefits to be received and conditions under which they will be available. I also understand my group treasurer acts as my agent in forwarding payments to Blue Cross or Blue Cross-Blue Shield, Little Rock, Arkansas.

''I understand that services are available on the common service date established for my group and I certify that neither I nor any dependents eligible under this application have any knowledge of any condition which may require hospital, medical, or surgical care.''

On this same day (May 29th) Cragar gave his check for $16.20, payable to Perry County Farm Bureau. In the face of this check was this language: ''This check is to apply on account as shown thereon. Acceptance by endorsement constitutes receipt. First full Quarterly payment for Blue Cross-Blue Shield effective June 1, 1951, providing County quota is reached.'' This check was in payment of appellee's first quarterly premium.

May 31, 1951, Mr. Paul, as secretary-treasurer of the Perry County Farm Bureau, mailed the new applications, including appellee's, with a Perry County Farm Bureau County check for $129.90, to cover appellee's quarterly

premium, along with the premiums of the other applicants. This letter contains this recital: "Enclosed you will find 13 applications from Farm Bureau Members for participation in the Blue Cross-Blue Shield Plan. These policies are to go into effect June 1, 1951. You will find enclosed with this letter a check in the amount of $129.90 to cover these applications," etc.

Appellant replied to this letter on June 2nd as follows: "We. received today thirteen additions to your Perry County Blue Cross-Blue Shield group.

"Your letter indicated a request for an effective date June 1, which I presume was a typographical error as your semi-annual anniversary date is June 15, on which date these thirteen applications will be effective.

"I did want to call this to your attention in the event there was a misunderstanding on the part of some of the applicants."

Appellant retained appellee's application (which, as indicated, bore the effective date of June 1st) along with the above check, accepted appellee as a member, and cashed the check. It is also undisputed that on receipt of appellee's application, the effective date thereon was changed from June 1st to June 15th by appellant, by someone in its processing department. Just who made this change, the record does not disclose. Appellee testified that he did not authorize the change and thought June 1st was the correct and effective date.

Appellant permitted June 1st to be used as the effective date for some of its groups and June 15th for others. Be that as it may, as indicated, we hold that the undisputed evidence shows, as the court found, that the effective date in the instant case was June 1, 1951, and not June 15th as appellant claimed.

But says appellant, appellee was bound by appellant's letter to Paul (appellee's agent) and that "notice to an agent (Paul) is notice to the principal, if it is given to an agent apparently authorized to receive it." The answer is that Paul's authority, in the circumstances here, was that of a special agency and was so specifically

limited to perform a single act for appellee, that is, to transmit appellee's quarterly premium money to appellant. Appellee's written application, as indicated above, so provides in this language: "My group treasurer (Paul) acts as my agent in forwarding payments to Blue Cross or Blue Cross-Blue Shield, Little Rock, Arkansas."

Appellee testified that neither Mr. Paul nor the Company notified him of any change in the effective date, and that his first knowledge of any change in date was "not until around the 15th of June, 15th or somewhere around that."

"A special agency exists when there is a delegation of authority to do a single act. A general agency is where there is a delegation to do all acts connected with a particular business or employment." (*Keith* v. *Herschberg Optical Co.*, 48 Ark. 138, 2 S. W. 777.)

Affirmed.

Justices McFADDIN and WARD dissent.